and ability to cross examine witnesses. (Tr. 3/21/00, pp. 21, 43, 44, 48, 50, 64, 69, 84-86, 91, 101-122; 142; 157, 175-80; Tr. 3/22/00, pp. 3, 5, 9-27, 32-34, 39, 50, 65, 69, 88; Tr. 3/23/00, pp. 10, 15, 16, 20, 38-52, 55, 69-75, 78, 80, 90, 95, 102-103, 113-118, 136, 145-149, 152-155, 177-178, 191, 198; Tr. 3/27/00, pp. 2, 20, 25, 27-28, 30, 32-38, 40-69, 83, 92, 96, 105, 108-109, 110-118, 128, 137,140, 144; Tr. 3/29/00, pp. 5-50; Tr. 3/30/00, pp. 2-10, 43.

As a result, the defendant was convicted on all counts. This appeal followed.

## ARGUMENT

### 1. The Court Erred In Denying The Defendant's Motion to Sever

The most obvious example of possible prejudice is that, when the crimes, near in time, place and circumstance, are so similar although legally unconnected there is danger that the jury will use the evidence of one crime to convict the defendant of the other crimes. State v. Horne, 215 Conn. 538 (1990). See Drew v. United States, 331 F.2d 85, 89 (D.C.Cir. 1964 ); 1 Wigmore, Evidence (3d Ed.) §194. State v. Oliver, 161 Conn. 348, 361(1971). State v. King, 187 Conn. 292, 299 (1982). Where cases are viewed as involving factually similar but legally unrelated incidents, joinder is inappropriate. Horne, supra; State v. Greene, 209 Conn. 458, 464 (1988); King, supra, at 117.

In State v. King, the Court noted that an improper joinder exposed the defendant to potential prejudice for two reasons. First, when several charges have been made against the defendant, " 'the jury may consider that a person charged with doing so many things is

a bad [person] who must have done something, and may cumulate evidence against him ...'; see Drew v. United States, [supra at 88]...." State v. King, supra at 298-99. Second, the jury may have used the evidence of one case to convict the defendant in another case "even though that evidence would have been inadmissible at a separate trial." Id. at 299. "[T]he danger that proof of one offense may be used to convict of a second offense, even though inadmissible at a separate trial, poses 'greater problems in trials involving similar offenses.' " Id. at 302.

Joinder of cases that are factually similar but legally unconnected, such as those involved here, present the greatest danger that a defendant will be subjected to the " 'omnipresent risk ... that "although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all." United States v. Lotsch, 102 F.2d 35, 36 (2d Cir.), cert. denied, 307 U.S. 622 (1939); State v. Boscarino, 204 Conn. 714, 721-22 (1987); State v. Herring, 210 Conn. 78, 95, cert. denied, 492 U.S. 912 (1989). It is the defendant's burden on appeal to show that consolidation of his cases resulted in substantial injustice, and that any resulting prejudice was 'beyond the curative power of the court's instructions.' State v. King, supra, at 302; State v. Silver, 139 Conn. 234, 240 (1952); State v. Boscarino, supra, 204 Conn. at 721.

In assessing prejudice, a reviewing court should consider factors such as "(1)

whether the charges involved 'discrete, easily distinguishable factual scenarios'; (2) whether the crimes were of a 'violent nature' or concerned 'brutal or shocking conduct' on the defendant's part; and (3) the 'duration and complexity of the trial.' State v. Boscarino, supra, at 722-23." State v. Herring, supra, 210 Conn. at 95. "[I]f any or all of these factors were present, a reviewing court would have to decide whether the trial court's jury instructions cured any prejudice that might have occurred. [State v. Boscarino, supra, 204 Conn. at] 724." Id.

Where all incidents share similarities such as time period, location, modus operandi and similar actions alleged to have been taken, or statements alleged to have been made by the defendants, this factor favors a determination that severance was required. State v. Boscarino, supra at 721." Id., at 119. In Boscarino, as here, the facial similarity between the four cases exposed the defendant to the potential prejudice that the jury would decide, cumulatively, that the defendant was guilty of all crimes alleged.

The similarities here were not so extensive, however, that the cases were legally connected. The four cases differed factually, so that none could qualify as proof of another under the only theory available here, the narrowly defined "similar crimes or misconduct" exception. See State v. Pollitt, 205 Conn. 61, 68-72 (1987). The cases differed in the nature of each claimed contact, the age of the complainants, that one complainant was a stepdaughter, the manner in which the defendant treated each victim, and the presence or

absence of force. See, e.g., State v. Esposito, 192 Conn. 166 (1984), cert. denied sub nom. Pierson v. Connecticut, 489 U.S. 1016 (1989); State v. Williams, 190 Conn. 104, 107-108 (1983); State v. Ibraimov, 187 Conn. 348, 353-54 (1982). The nature of the similarities and differences militate that, at most, "they were repeat crimes, although not signature crimes...." See, e.g., State v. Sierra, 213 Conn. 422, 429-33, (1990).

As to the second Boscarino factor, the sexual assaults alleged in each case unarguably confronted the jury with "brutal or shocking conduct." State v. Horne, supra. The absence of physical harm accompanying the sexual assault and the lack of "sensationalize [d]" testimony have been argued to distinguished cases from Boscarino. Id., at 119-20, 124. Here, the distinction is untenable as the very nature of any one of the claimed assaults inevitably had a great impact on the jury, even absent the claims of use of force, threat and actual injury made in the instant case. State v. Horne, 215 Conn. 538 (1990). As pointed out in Horne, supra, "the brutality with which the assailant carried out the robbery and sexual assault in the Uniform Boutique case was very likely to have so aroused the passions of the jury that it interfered with their fair consideration of the other three cases." Id. The Court has acknowledged that evidence of a defendant's brutal or shocking conduct in one case may compromise the jury's ability to consider fairly the charges against him in other unrelated, but jointly tried cases. That well-established postulate is here multiplied threefold. See State v. King, supra; State v. Silver, supra, at

240- 41; see generally State v. Carter, 189 Conn. 631, 644 (1983); State v. Tinsley, 180 Conn. 167, 171 (1980). State v. Boscarino, supra, 204 Conn. at 723.

By any barometer of human behavior, the assaults claimed in the instant case constitute "shocking conduct" that inevitably infected the jury's fair consideration of the other cases. Horne, supra at 549. A sexual assault accompanied by force or threat, particularly where the victims are alleged to have been young children and the defendant their father or stepfather, causes obvious psychological and emotional injuries. Such injuries often far exceed physical injuries in duration and in their impact on the victims' life. " 'Short of homicide, [sexual assault] is the "ultimate violation of self." It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist. [Sexual assault] is very often accompanied by physical injury to the [victim] and can also inflict mental and psychological damage.' Coker v. Georgia, 433 U.S. 584, 597-98 (1977)." State v. Havican, 213 Conn. 593, 599 n. 3 (1990). Testimony adduced at trial from the victims illustrate the substantial emotional impact the sexual assaults had on them. Horne, supra.

In Horne, the Court noted that three of the four sexual assaults at issue in Boscarino involved no physical harm, and the fourth involved knife wounds that were intended not to harm but rather to terrorize the victim into submission. State v. Boscarino, supra, at 717-18. In Boscarino and Horne the Court held, nonetheless, that

the trial court erred in consolidating the four cases because their factual similarities, although insufficient to make the evidence in each case admissible at the trial of the other cases, impaired the defendant's right to the jury's fair and independent consideration of the evidence in each case. Id. at 723. "The prejudicial impact of joinder in these cases was exacerbated by the violent nature of the crimes with which the defendant was charged." Id. Last, our assessment of the "brutality" of the crimes in Boscarino was not predicated on whether "the state in its presentation [or] the witness in her testimony sensationalized the sexual assault in any way." State v. Horne, supra, 19 Conn. App. at 124, 562 A.2d 43. In both Boscarino and Horne, as in the case before the Court, the prejudicial impact of the sexual assault arose from the plain exposition of the facts. Id.

Having established the scope and extent of the prejudice to which the defendant was exposed, the court must next determine whether the jury instruction at the conclusion of the trial was adequate to mitigate that prejudice. Horne, supra at 551. "Although we have frequently stated that, in the absence of contrary evidence, jurors are presumed to have followed the instructions of the trial court; see, e.g., State v. Moye, 199 Conn. 389, 396(1986); we have also held that 'a curative instruction is not inevitably sufficient to overcome the prejudicial impact of [inadmissible other crimes] evidence.' State v. Tinsley, 180 Conn. at 170." State v. Boscarino, supra, 204 Conn. at 724-25. In Boscarino, the trial court repeatedly and explicitly instructed the jury to keep the evidence of the cases

separate and distinct: "[b]efore the state commenced its case-in-chief in each of the cases, and in its final instructions to the jury, the trial court admonished the jurors that the cases against the defendant were separate and that they should not allow the evidence in one case to influence their consideration of any other." Id., at 719, 529 A.2d 1260. In its final instructions, the trial court was explicit in telling the jury repeatedly to keep the evidence of each case separate. Id., at 719 n. 6, 529 A.2d 1260.

The jury instruction in the present case falls far short of the Boscarino instructions, wherein the jury was admonished and instructed five times: four times during trial, at the commencement of each case-in- chief; and once in the final instruction. Yet, despite the thoroughness of the trial court's admonitions to the jury in Boscarino, we concluded that the instructions nonetheless were inadequate to mitigate the prejudice to which the defendant had been subjected by joinder of the four cases.

When it consolidated the four cases, the trial court of necessity required the jury to undertake the heavy burden of listening to four separate yet somewhat similar cases against the defendant, to ignore their obvious interrelations and overlappings, and to resist the accompanying tendency to cumulate the evidence. The trial court also asked the jury somehow to ignore the obviously inflammatory nature and impact of the sexual assault. 'The government should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but