... photographic lineup, and instructing the **jury** on criminal intent. Additionally, the ...

3. United States v. Parks, No. 03-1286 , UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT , 364 F.3d 902; 2004 U.S. App. LEXIS 7181, October 21, 2003, Submitted, April 14, 2004, Filed, THIS OPINION WAS WITHDRAWN BY THE COURT, Rehearing denied by United States v. Parks, 2004 U.S. App. LEXIS 9669 (8th Cir. Neb., May 18, 2004) Vacated by, Remanded by, Motion granted by Parks v. United States, 160 L. Ed. 2d 1008, 125 S. Ct. 1022, 2005 U.S. LEXIS 1072 (U.S., 2005) Vacated by United States v. Parks, 2005 U.S. App. LEXIS 14786 (8th Cir. Neb., July 21, 2005) Reaffirmed, Supplemental opinion at United States v. Parks, 2005 U.S. App. LEXIS 14799 (8th Cir. Neb., July 21, 2005)

   **OVERVIEW:** Because the use of replica evidence for demonstrative purposes was a widely-accepted practice, and the court took steps to minimize prejudice to defendant, the district court did not abuse its discretion when it allowed the use of replica handguns.

   **CORE TERMS:** methamphetamine, gun, handgun, ounce, resale, demonstrative, conspiracy, distribute, downward, firearm ...

   ... convicted by a **jury** of one count of conspiracy to ...
   ... 18 U.S.C. § 922(a)(6). Parks disputes whether the **jury** had sufficient evidence to find ...
   ... drawn from the evidence that support the **jury's** verdict." United States v. Espino, 317 F.3d 788, 792 (8th Cir. 2003) ...
   ... business together." She told the **jury** that Parks would provide her with samples of ...
   ... sufficiency of the evidence to support the **jury's** determination that-on three occasions-he ...
   ... fact may have assisted the **jury** in its ultimate determinations ...
   ... Given Tindall's testimony, the **jury's** verdict rests on evidence that is ...
   ... government sought to show the **jury** the types of weapons that Parks ...
   ... Tindall. The government argued that these **replica weapons** would assist the **jury** in its evaluation of the pending ...
   ... a limiting instruction to the **jury.** The district court told the **jury** that these weapons were admitted for ...
   ... guns did not go to the **jury** room during deliberations. The ...
   ... court further instructed the **jury** that the handguns were not the actual ...
   ... Banning v. United States, 130 F.2d 330, 335-36 (6th Cir. 1942). Here, the potential prejudice-**jury** confusion over whether the guns ...

4. United States v. Sykes, No. 00-5377, UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT, 292 F.3d 495; 2002 U.S. App. LEXIS 10743; 2002 FED App. 0199P (6th Cir.), April 26, 2002, Argued, June 6, 2002, Decided, June 6, 2002, Filed, Writ of certiorari denied: Sykes v. United States, 2002 U.S. LEXIS 7542 (U.S. Oct. 15, 2002).

   **OVERVIEW:** Defendant convicted of using semi-automatic assault rifle while leading bank robbery knowingly waived his right to have weapons charge heard by jury and proven beyond a reasonable doubt, and right to appeal sentence.

   **CORE TERMS:** weapon, semi-automatic, firearm, sentence, robbery, automatic, bank robbery, mandatory, right to appeal, consecutive sentence ...

   ... rule out the possibility that the **weapon** was a **replica.** Sykes also entered an

**OUTCOME:** The decision of the district court was affirmed in all respects.

**CORE TERMS:** methamphetamine, gun, handgun, ounce, resale, demonstrative, conspiracy, distribute, downward, firearm, gram, quantity, weapon, departure, replica, depart, fronted, sufficient evidence, favorable, breaking down, admitting, purchaser, teener, sufficient to support, abuse of discretion, sentence imposed, false statement, discretionary, evidence to support, criminal history

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Delivery, Distribution & Sale > General Overview
Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy > Elements
Criminal Law & Procedure > Appeals > Standards of Review > Substantial Evidence

***HN1*** In order to convict a defendant of conspiracy to distribute, the government is required to prove that: (1) a conspiracy with an illegal purpose existed; (2) the defendant knew about the conspiracy; and (3) he knowingly became a part of the conspiracy. In reviewing whether sufficient evidence was presented to support the charge, an appellate court considers the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict. More Like This Headnote

Criminal Law & Procedure > Appeals > Standards of Review > Substantial Evidence
Evidence > Procedural Considerations > Weight & Sufficiency
Evidence > Scientific Evidence > Toxicology

***HN2*** In an appellate court's review of the sufficiency of evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. More Like This Headnote

Criminal Law & Procedure > Sentencing > Departures
Criminal Law & Procedure > Appeals > Reviewability > General Overview

***HN3*** The United States Court of Appeals for the Eighth Circuit has held that the discretionary refusal to depart downward is not reviewable under 18 U.S.C.S. § 3553. An appellate court reviews a denial of a downward departure only to determine whether the district court properly applied the U.S. Sentencing Guidelines; the appellate court does not review its determination that a departure was not warranted. More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Appeals > Standards of Review > Abuse of Discretion > General Overview
Evidence > Relevance > Confusion, Prejudice & Waste of Time

***HN4*** An appellate court reviews a district court's determinations concerning admissibility of evidence for abuse of discretion. In balancing the prejudicial effect and probative value, great deference is given to the district judge's determination. More Like This Headnote | *Shepardize:* Restrict By Headnote

Evidence > Demonstrative Evidence > General Overview

***HN5*** The United States Court of Appeals for the Eighth Circuit has previously approved the use of replica evidence, more specifically guns, for demonstrative purposes. Courts in its sister circuits have also frequently approved of the admission of replica evidence, more specifically guns, for demonstrative purposes. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** For UNITED STATES OF AMERICA, Plaintiff - Appellee: Steven Arthur Russell, Asst. U.S. Attorney, U.S. ATTORNEY'S OFFICE, Lincoln, NE.

For JOSHUA PARKS, Defendant - Appellant: Jeremy P. Murphy, Lincoln, NE.

JOSHUA PARKS, Defendant - Appellant, Pro se, El Reno, OK.

**JUDGES:** Before RILEY, BEAM, and SMITH, Circuit Judges.

**OPINION BY:** SMITH

**OPINION:**

**[*903]** SMITH, Circuit Judge.

Joshua Parks was convicted by a jury of one count of conspiracy to distribute and possession with the intent to distribute over fifty grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and three counts of aiding and abetting a false statement in connection with a firearm purchase in violation of 18 U.S.C. § 922(a)(6). Parks disputes whether the jury had sufficient evidence to find a conspiracy involving more than fifty grams, and whether there was sufficient evidence presented to support the gun charges. Parks also challenges the district court's n1 denial of his motion for downward departure, pursuant to Sentencing Guidelines § 5H1.1, § 5K2.0, and § 4A1.3. Finally, Parks questions **[**2]** the district court's evidentiary ruling permitting the government's use of demonstrative aids during trial. For the reasons set forth below, we affirm the judgment and sentence imposed by the district court.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*904]** I. *Drug Conviction*

Parks first argues that the evidence was insufficient to support his conviction for conspiracy with intent to distribute and possession of methamphetamine with intent to distribute. He contends the evidence does not sufficiently establish that he intended to distribute the methamphetamine. We disagree.

***HN1***In order to convict Parks of conspiracy to distribute, the government was required to prove that (1) a conspiracy with an illegal purpose existed, (2) Parks knew about the conspiracy, and (3) he knowingly became a part of the conspiracy. *United States v. Washington*, 318 F.3d 845, 852 (8th Cir. 2003). In reviewing whether sufficient evidence was presented to support **[**3]** the charge, we consider the evidence "in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Espino*, 317 F.3d 788, 792 (8th Cir. 2003).

Government witness Laura Tindall testified that she first met Parks in 2000, while employed at a Kwik Shop located in Lincoln, Nebraska. At that time, Tindall was using and selling methamphetamine. Tindall testified that Parks came to the Kwik Shop and told her that he

had something for her to try, which she later determined to be a half gram of methamphetamine. She further testified that Parks returned to the Kwik Shop a second time, and that they "started kinda doing business together." She told the jury that Parks would provide her with samples of methamphetamine for her own personal use, hoping that she would approve of the drug's quality and sell it to other customers. She testified that Parks provided her with methamphetamine samples fifteen to thirty times, and that each sample was approximately one-half gram of methamphetamine.

Tindall stated that Parks would **[**4]** frequently contact her to inquire whether she needed any methamphetamine for resale, and that in the late fall of 2000 she began to buy methamphetamine directly from Parks. Parks would come to her home, provide her with a sample of methamphetamine to be purchased, and then would give her a price for the methamphetamine. Tindall testified that she purchased "teeners" of methamphetamine (1.75 grams) from Parks on approximately fifteen occasions. In addition to the "teeners" purchased from Parks, she purchased additional amounts of methamphetamine for resale in quantities ranging from one-eighth ounce to one-quarter ounce.

Beginning in the winter of 2000, and continuing through May 2001, Tindall stated that she was purchasing a large enough quantity of methamphetamine from Parks that he "fronted" her a resale supply. Tindall explained these drug fronts as a procedure whereby Parks would provide her with methamphetamine, establish a price, and then she would pay him after she sold the inventory. She stated that Parks fronted her drugs for resale approximately fifteen times.

Tindall also testified that she and Parks would "break down" the drugs. She testified that the "breaking down" **[**5]** process entails separating the drugs-even the small "teener" quantities-into smaller portions for resale. She further testified that on five to six separate occasions Parks brought methamphetamine to her home and they divided the drug into gram to half-gram quantities.

Tindall further testified that in early 2001 Parks brought four bags of methamphetamine-wrapped in cellophane-to her home. She estimated these bags in aggregate contained approximately four ounces **[*905]** of methamphetamine. Parks provided Tindall with a half-gram "sample" and inquired if she could "get rid" of the remaining methamphetamine for him. Tindall testified that because this particular methamphetamine was not of sufficient quality for her customers-she needed injection grade, not smoking grade-she was unable to accommodate his request.

Another government witness, Leonard Woodrum, testified that he purchased methamphetamine from Parks on two occasions. Woodrum purchased a quarter ounce of methamphetamine from Parks in September of 2000. Approximately two weeks later, Woodrum purchased another quarter ounce of methamphetamine from Parks. Also, in October of 2000, Parks fronted one ounce of methamphetamine to Woodrum **[**6]** for resale. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Woodrum testified that he was unsuccessful in his attempt to resell this quantity at the price that Parks designated, and the methamphetamine was ultimately returned to Parks.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Benjamin Schwab also testified that, for approximately four to five months (sometime after July 2000), he and Parks used and distributed methamphetamine. During this time period,

Schwab testified that he and Parks would use methamphetamine approximately every other day. Schwab stated that on one occasion-while traveling in Parks's vehicle-he observed at least one ounce of methamphetamine secreted in a CD case. Also, Schwab testified that he observed Parks "breaking down" an ounce of methamphetamine into "eight balls" (one-eighth ounce quantities). Schwab acknowledged that he knew Parks was in the business of selling methamphetamine and that in October of 2000 he accompanied Parks to York, Nebraska, for the express purpose of acquiring a supply of methamphetamine. Schwab testified that on this trip Parks received two ounces **[**7]** of methamphetamine from Parks's supplier.

Finally, LaTriesha Rogers testified that her roommate, Miranda Easton, contacted Parks to acquire methamphetamine. In response to Easton's request, Parks delivered an "eight ball" of methamphetamine to their residence.

*HN2*In our review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). Here, numerous witnesses testified that Parks sold and distributed methamphetamine. The testimony also established that Parks provided promotional amounts of the drug to encourage resale; that he often "fronted" drugs for resale; and that he engaged in the "breaking down" process of the drug to facilitate distribution for resale. The witnesses also detailed Parks's involvement in a conspiracy involving a quantity of methamphetamine in excess of fifty grams. Considering the evidence in the light most favorable to the verdict, we find that the evidence was more than sufficient to support Parks's conviction on the **[**8]** challenged count.

II. *Gun Convictions*

Parks also challenges the sufficiency of the evidence to support the jury's determination that-on three occasions-he aided and abetted a false statement in connection with a firearm purchase. We are not persuaded by his argument.

Tindall testified that in May of 2001, Parks approached her requesting that she purchase a weapon for him using her handgun-purchase certificate. He indicated that he would change ownership into his name at the police department after the purchase. Tindall responded that she **[*906]** did not have the money to buy a handgun. Tindall stated that Parks then agreed to supply the money for the handgun purchase. On May 20, 2001, she and Parks entered Scheels Sporting Goods in Lincoln, Nebraska. Parks selected a weapon and Tindall purchased the handgun and ammunition. At the time of purchase, Tindall attested in writing that she was the actual purchaser of the firearm. She testified at trial that-despite her declaration otherwise-Parks was the actual purchaser of the firearm. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 On appeal, Parks brings particular attention to the fact that at the time of the gun purchases Tindall's-otherwise valid-Nebraska driver's license was expired. While this fact may have assisted the jury in its ultimate determinations relating to Tindall's credibility, it is of little relevance in our review of the sufficiency of the evidence to support the gun charges.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[**9]**

The following day, after Parks explained that he needed another gun, Tindall and Parks went to the Arms & Ammo gun dealer and purchased two handguns with funds supplied by Parks. She testified that after the purchase-and again, contrary to her attestation that she was the actual purchaser-Parks took possession of both newly-acquired firearms.

On May 29, 2001, Tindall again purchased handguns on Parks's behalf. Parks provided the money for the purchase of three additional handguns from the same Arms & Ammo store. Again, Tindall indicated that she was the actual purchaser.

In all, Parks and Tindall purchased six handguns in nine days. At the time of these purchases, Parks was nineteen years of age, had not acquired a permit to purchase a handgun pursuant to Nebraska law, and was ineligible to purchase or possess a handgun. Parks, however, provided the funds for Tindall's purchase of the handguns and took possession of the guns after Tindall completed each purchase. Given Tindall's testimony, the jury's verdict rests on evidence that is more than sufficient to support the gun-related convictions.

III. *Downward Departure*

Parks next argues that the district court erred in its refusal **[**10]** to grant his motion for a downward departure. Parks asserts that the Presentence Investigation Report overstated his criminal history and that his case was outside the "heartland" of other defendants. The district court was not persuaded and gave Parks a sentence within the Guidelines range. According to the district court, Parks's criminal history was not overstated, "either in terms of whether it accurately describes the true offense behavior, or the likelihood of the predictive value of recidivism," and that Parks's troubled youth was not "sufficiently extraordinary . . . to take it outside the heartland."

Parks asks us to reconsider the district court's refusal to depart downward in light of the extraordinary circumstances of this case and asserts that we must review the departure determination de novo. In response, the government asserts that we lack jurisdiction to review the district court's discretionary refusal to depart downward. Our holding in *United States v. Henderson-Durand*, 985 F.2d 970, 976 (8th Cir.), *cert. denied*, 510 U.S. 856, 126 L. Ed. 2d 125, 114 S. Ct. 164 (1993) is dispositive. In *Henderson-Durand* *HN3* we held that the discretionary refusal to depart downward **[**11]** is not reviewable under 18 U.S.C. § 3742. We review a denial of a downward departure only to determine whether the district court properly applied the Sentencing Guidelines; we do not review its determination that a departure was not warranted. *Henderson-Durand, supra.*

It is clear from a reading of the district court's statement denying Parks's downward-departure **[*907]** motion that the court recognized its authority to depart, and simply chose not to. Thus, the valid sentence imposed by the district court is not subject to our review.

IV. *Demonstrative Aids*

Finally, n4 Parks argues that the introduction of handguns similar to the ones that he obtained-though not the actual ones-prejudiced him at trial. Consequently, he argues, the district court abused its discretion in admitting the demonstrative evidence. During the course of the trial, the government offered numerous firearms into evidence for demonstrative purposes. The government sought to show the jury the types of weapons that Parks allegedly purchased through Tindall. The government argued that these replica weapons would assist the jury in its evaluation of the pending gun charges. The district **[**12]** court permitted the use of the demonstrative aids but gave a limiting instruction to the jury. The district court told the jury that these weapons were admitted for demonstrative purposes only "so you get a sense of what the guns looked like, what type of gun it was." The guns did not go to the jury room during deliberations. The district court further instructed the jury that the handguns were not the actual guns that were purchased.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Parks makes a passing argument that the district court erred in admitting Parks's statement to Special Agent Leadingham. However, the statement was made by a party opponent and offered against the party. The statement is admissible under Rule 801(d)(2)(A) of the Federal Rules of Evidence. Accordingly, the district court did not abuse its discretion in admitting Parks's statement.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*HN4*We review the district court's determinations concerning admissibility of evidence for abuse of discretion. *United States v. Kehoe*, 310 F.3d 579, 590 (8th Cir. 2002). **[**13]** In balancing the prejudicial effect and probative value, great deference is given to the district judge's determination. *United States v. Allee*, 299 F.3d 996, 1002 (8th Cir. 2002). *HN5*We have previously approved the use of replica evidence, more specifically guns, for demonstrative purposes. *See United States v. McIntosh*, 23 F.3d 1454, 1456 (8th Cir. 1994); *see also*, *Flores v. State of Minnesota*, 906 F.2d 1300, 1304 (8th Cir.), *cert. denied*, 498 U.S. 945, 112 L. Ed. 2d 322, 111 S. Ct. 359 (1990). Courts in our sister circuits have also frequently approved of the admission of replica evidence, more specifically guns, for demonstrative purposes. *United States v. Aldaco*, 201 F.3d 979, 986 (7th Cir. 2000); *United States v. Russell*, 971 F.2d 1098, 1105 (4th Cir. 1992); *United States v. Ferreira*, 821 F.2d 1, 6 (1st Cir. 1987); *Banning v. United States*, 130 F.2d 330, 335-36 (6th Cir. 1942).

Here, the potential prejudice-jury confusion over whether the guns displayed in court were the actual guns at issue-was adequately addressed by the district court's prohibition on the use **[**14]** of the weapons during deliberations and the accompanying cautionary instructions. Because the use of replica evidence for demonstrative purposes is a widely-accepted practice, and because the court took steps to minimize potential prejudice to Parks, we find no abuse of discretion in allowing the use of replica handguns in this case.

For the foregoing reasons, we affirm the decision of the district court in all respects.

Service: **Get by LEXSEE®**
Citation: **364 f3d 902**
View: Full
Date/Time: Thursday, April 26, 2007 - 11:39 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

LexisNexis About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **2005 us app lexis 14786**

*2005 U.S. App. LEXIS 14786, **

United States of America, Appellee, vs. Joshua Parks, Appellant.

No. 03-1286

UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

2005 U.S. App. LEXIS 14786

July 21, 2005, Decided

**PRIOR HISTORY:** **[*1]** Appeal from the United States District Court for the District of Nebraska. United States v. Parks, 364 F.3d 902, 2004 U.S. App. LEXIS 7181 (8th Cir. Neb., 2004)

**OPINION:** Pursuant to the Supreme Court judgment dated January 24, 2005, the judgment of this court dated April 14, 2004, is vacated.

Service: **Get by LEXSEE®**
Citation: **2005 us app lexis 14786**
View: Full
Date/Time: Thursday, April 26, 2007 - 11:41 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

LexisNexis® About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **2004 us app lexis 9669**

*2004 U.S. App. LEXIS 9669, **

United States of America, Appellee, v. Joshua Parks, Appellant.

No. 03-1286

UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

2004 U.S. App. LEXIS 9669

May 18, 2004, Decided

**PRIOR HISTORY:** United States v. Parks, 364 F.3d 902, 2004 U.S. App. LEXIS 7181 (8th Cir. Neb., 2004)

**COUNSEL:** For UNITED STATES OF AMERICA, Plaintiff - Appellee: Steven Arthur Russell, Asst. U.S. Attorney, U.S. ATTORNERY'S OFFICE, Lincoln, NE.

For JOSHUA PARKS, Defendant - Appellant: Jeremy P. Murphy, Lincoln, NE.; Pro se, El Reno, OK.

**OPINION: [*1]**

Appeal from the United States District Court for the District of Nebraska

The petition for rehearing by the panel filed by Joshua Parks is denied.

May 18, 2004

Service: **Get by LEXSEE®**
Citation: **2004 us app lexis 9669**
View: Full
Date/Time: Thursday, April 26, 2007 - 11:39 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

LexisNexis® About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **160 l ed 2d 1008**

Select for FOCUS™ or Delivery

☐

*543 U.S. 1101, *; 125 S. Ct. 1022;*
*160 L. Ed. 2d 1008; 2005 U.S. LEXIS 1072, ***

Joshua Parks, Petitioner v. United States.

No. 04-5305.

SUPREME COURT OF THE UNITED STATES

543 U.S. 1101; 125 S. Ct. 1022; 160 L. Ed. 2d 1008; 2005 U.S. LEXIS 1072; 73 U.S.L.W. 3438

January 24, 2005, Decided

**PRIOR HISTORY:** United States v. Parks, 364 F.3d 902, 2004 U.S. App. LEXIS 7181 (8th Cir. Neb., 2004)

**JUDGES: [**1]** Rehnquist, Stevens, O'Connor, Scalia, Kennedy, Souter, Thomas, Ginsburg, Breyer.

**OPINION: [*1116]** On petition for writ of certiorari to the United States Court of Appeals for the Eighth Circuit. Motion of petitioner for leave to proceed *in forma pauperis* and petition for writ of certiorari granted. Judgment vacated, and case remanded to the United States Court of Appeals for the Eighth Circuit for further consideration in light of United States v. Booker, 543 U.S. ___, 543 U.S. 220, 160 L. Ed. 2d 621, 125 S. Ct. 738, 2005 U.S. LEXIS 628 (2005).

Service: **Get by LEXSEE®**
Citation: **160 l ed 2d 1008**
View: Full
Date/Time: Thursday, April 26, 2007 - 11:40 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

LexisNexis
About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Signal: Warning: Negative treatment is indicated
Trail: **Unrestricted**

*United States v. Parks, 364 F.3d 902, 2004 U.S. App. LEXIS 7181 (8th Cir. Neb. 2004)*

**SHEPARD'S SUMMARY** ♦ **Hide Summary**

**Unrestricted *Shepard's* Summary**

**Subsequent appellate history contains negative analysis.**

**Citing References:**

Positive Analyses: Followed (1)

Other Sources: Statutes (4), Treatises (3)

**LexisNexis Headnotes:** HN3 (2), HN4 (2), HN5 (2)

Show full text of headnotes

**PRIOR HISTORY ( 0 citing references )** ♦ **Hide Prior History**

**(CITATION YOU ENTERED):**
United States v. Parks, 364 F.3d 902, 2004 U.S. App. LEXIS 7181 (8th Cir. Neb. 2004)

**SUBSEQUENT APPELLATE HISTORY ( 6 citing references )** ♦ **Hide Subsequent Appellate History**

Select for Delivery

☐ 1. **Rehearing denied by:**
United States v. Parks, 2004 U.S. App. LEXIS 9669 (8th Cir. Neb. May 18, 2004)

☐ 2. **Vacated by, Remanded by, Motion granted by:**
Parks v. United States, 543 U.S. 1101, 125 S. Ct. 1022, 160 L. Ed. 2d 1008, 2005 U.S. LEXIS 1072, 73 U.S.L.W. 3438 (2005)

☐ 3. **Vacated by:**
United States v. Parks, 2005 U.S. App. LEXIS 14786 (8th Cir. Neb. July 21, 2005)

☐ 4. **Reaffirmed, Supplemental opinion at:**
United States v. Parks, 415 F.3d 878, 2005 U.S. App. LEXIS 14799 (8th Cir. Neb. 2005)

☐ 5. **Rehearing denied by, Rehearing, en banc, denied by:**
United States v. Parks, 2005 U.S. App. LEXIS 18481 (8th Cir. Aug. 26, 2005)

☐ 6. **Writ of certiorari denied:**
Parks v. United States, 546 U.S. 1117, 126 S. Ct. 1085, 163 L. Ed. 2d 902, 2006 U.S. LEXIS 369 (2006)

**CITING DECISIONS ( 4 citing decisions )**

## 8TH CIRCUIT - COURT OF APPEALS

☐ 7. **Cited by:**
United States v. Parks, 415 F.3d 878, 2005 U.S. App. LEXIS 14799 (8th Cir. Neb. 2005) LexisNexis Headnotes HN3

☐ 8. **Cited by:**
United States v. Conn, 119 Fed. Appx. 846, 2005 U.S. App. LEXIS 958 (8th Cir. Neb. 2005) LexisNexis Headnotes HN3

119 Fed. Appx. 846 p.846

## 8TH CIRCUIT - U.S. DISTRICT COURTS

☐ 9. **Cited by:**
United States v. Johnson, 354 F. Supp. 2d 939, 2005 U.S. Dist. LEXIS 4491 (N.D. Iowa 2005) LexisNexis Headnotes HN4, HN5

354 F. Supp. 2d 939 p.976

☐ 10. **Followed by, Cited by:**
United States v. Honken, 378 F. Supp. 2d 928, 2004 U.S. Dist. LEXIS 28241 (N.D. Iowa 2004) LexisNexis Headnotes HN4, HN5

**Followed by:**
378 F. Supp. 2d 928 p.966

**Cited by:**
378 F. Supp. 2d 928 p.965

## ANNOTATED STATUTES ( 4 Citing Statutes )

☐ 11. 18 USCS @ 922

☐ 12. 18 USCS @ 3553

☐ 13. 21 USCS @ 841

☐ 14. 21 USCS @ 846

## TREATISE CITATIONS ( 3 Citing Sources )

☐ 15. 1-403 Federal Rules of Evidence Manual (@ 403.03)

☐ 16. 2-403 Weinstein's Federal Evidence @ 403.07

☐ 17. 4-611 Weinstein's Federal Evidence @ 611.02

Signal: Warning: Negative treatment is indicated
Citation: **364 F.3d 902** (Get this Document, Table of Authorities)
View: Full
Trail: **Unrestricted**
Location: 1 - 17 of 17 Total Cites
Date/Time: Thursday, April 26, 2007 - 11:39 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* editorial treatment code (e.g., distinguished, questioned) to view its definition.

LexisNexis About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **2005 U.S. App. LEXIS 14799**

*415 F.3d 878, *; 2005 U.S. App. LEXIS 14799, ***

United States of America, Appellee, v. Joshua Parks, Appellant.

No. 03-1286

UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

415 F.3d 878; 2005 U.S. App. LEXIS 14799

February 24, 2005, Submitted
July 21, 2005, Filed

**SUBSEQUENT HISTORY:** Rehearing denied by, Rehearing, en banc, denied by United States v. Parks, 2005 U.S. App. LEXIS 18481 (8th Cir., Aug. 26, 2005)
US Supreme Court certiorari denied by Parks v. United States, 2006 U.S. LEXIS 369 (U.S., Jan. 9, 2006)

**PRIOR HISTORY: [**1]** Appeal from the United States District Court for the District of Nebraska. United States v. Parks, 364 F.3d 902, 2004 U.S. App. LEXIS 7181 (8th Cir. Neb., 2004)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** In the United States District Court for the District of Nebraska, a jury convicted defendant of drug and firearms offenses, violations 21 U.S.C.S. § 841(a)(1), 21 U.S.C.S. § 846, and 18 U.S.C.S. § 922(a)(6). Defendant appealed his convictions and sentence. The instant court affirmed. The United States Supreme Court granted certiorari, vacated the instant court's judgment, and remanded the case for further consideration in light of Booker.

**OVERVIEW:** When calculating defendant's sentence, the trial court enhanced the sentence for the amount of methamphetamine attributable to defendant and for possession of a firearm in connection with the offense. Defendant argued that the facts underlying those enhancements had to be found by the jury beyond a reasonable doubt. He argued that there was also Booker error because the U.S. Sentencing Guidelines Manual was applied as mandatory, rather than advisory. Defendant did not object at sentencing on the basis of Apprendi, Blakely, or the Sixth Amendment, nor did he challenge the constitutionality of the Guidelines, so the appeals court reviewed only for plain error. Defendant failed to establish that the trial court's errors affected his substantial rights. Defendant did not argue that the trial court would have imposed a more favorable sentence under an advisory Guidelines regime, and the record would not support that contention. While he was sentenced at the bottom of the obstruction-of-justice Guidelines range, that was insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the Booker error.

**OUTCOME:** The court reaffirm its earlier judgment, supplemented its prior opinion with the instant opinion, and affirmed the judgment of the district court in all respects.

**CORE TERMS:** guidelines, advisory, sentencing, reasonable probability, sufficient evidence,

plain error, distribute, mandatory, favorable, sentence, firearm

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Criminal Law & Procedure > Sentencing > Guidelines

**HN1** The Supreme Court held the U.S. Sentencing Guidelines Manual to be no longer mandatory, but advisory. More Like This Headnote

Criminal Law & Procedure > Sentencing > Adjustments
Criminal Law & Procedure > Sentencing > Appeals > General Overview
Criminal Law & Procedure > Appeals > Standards of Review > Plain Error > General Overview

**HN2** Where a defendant neither objected before the district court at sentencing on the basis of Apprendi, Blakely, or the Sixth Amendment, nor challenged the constitutionality of the U.S. Sentencing Guidelines Manual, a federal appeals court reviews for plain error. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Plain Error > General Overview
Criminal Law & Procedure > Appeals > Standards of Review > Plain Error > General Overview
Evidence > Procedural Considerations > Rulings on Evidence

**HN3** Plain error review is governed by a four-part test, which provides that before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, then an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. More Like This Headnote

Criminal Law & Procedure > Sentencing > Appeals > General Overview

**HN4** To prove the third Olano factor, that Booker error affected his substantial rights, a defendant error must show that there is a reasonable probability that the district court would have imposed a more favorable sentence under the advisory guidelines regime mandated by Booker. More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Obstruction of Justice > General Overview
Criminal Law & Procedure > Sentencing > Ranges
Criminal Law & Procedure > Appeals > Standards of Review > Plain Error > Burdens of Proof

**HN5** That a defendant was sentenced at the bottom of the applicable U.S. Sentencing Guidelines Manual range is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the Booker error. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** For UNITED STATES OF AMERICA, Plaintiff - Appellee: Steven Arthur Russell, Asst. U.S. Attorney, U.S. ATTORNEY'S OFFICE, Lincoln, NE.

For JOSHUA PARKS, Defendant - Appellant: Jeremy P. Murphy, Lincoln, NE.

JOSHUA PARKS, Defendant - Appellant, Pro se, El Reno, OK.

**JUDGES:** Before RILEY, BEAM, and SMITH, Circuit Judges.

**OPINION BY:** SMITH

**OPINION:**

[*879] SMITH, Circuit Judge.

Joshua Parks was convicted by a jury of one count of conspiracy to distribute and possession with the intent to distribute over fifty grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and three counts of aiding and abetting a false statement in connection with a firearm purchase in violation of 18 U.S.C. § 922(a)(6). In his initial appeal to this court, Parks disputed whether the jury had sufficient evidence to find a conspiracy involving more than fifty grams, and whether there was sufficient evidence presented to support the gun charges. Parks also challenged the district court's n1 denial of his motion for downward departure pursuant to U.S.S.G. §§ 5H1.1 **[**2]** , 5K2.0, and 4A1.3. Finally, Parks appealed the district court's evidentiary ruling permitting the government's use of demonstrative aids during trial.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

After we affirmed the judgment and sentence imposed by the district court, *United States v. Parks*, 364 F.3d 902 (8th Cir. 2004), the United States Supreme Court granted Parks's petition for certiorari. *Parks v. United States*, 160 L. Ed. 2d 1008, , 125 S. Ct. 1022, 2005 U.S. LEXIS 1072, at *1 (2005). *HN1*The Supreme Court held the Federal Sentencing Guidelines to be no longer mandatory, but advisory. *United* **[*880]** *States v. Booker*, 543 U.S. 220, 160 L. Ed. 2d 621, 125 S. Ct. 738, 756-57, 769 (2005). The Court vacated our judgment and remanded the case for further consideration in light of *Booker*. *Parks*, 160 L. Ed. 2d 1008, 2005 U.S. LEXIS 1072, at *1. **[**3]** We reaffirm our earlier judgment in all respects and supplement our prior opinion with the following discussion regarding Parks's sentencing.

Parks argues that the sentencing enhancements for the amount of methamphetamine attributable to Parks and possession of a firearm in connection with the offense, had to be found by the jury beyond a reasonable doubt. There was also *Booker* error because the Guidelines were applied as mandatory, rather than advisory. However, *HN2*because Parks neither objected before the district court at sentencing on the basis of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004), or the Sixth Amendment, nor challenged the constitutionality of the Guidelines, we review for plain error. *See United States v. Pirani*, 406 F.3d 543, 549-50 (8th Cir. 2005). *HN3*Plain error review is governed by the four-part test of *United States v. Olano*, 507 U.S. 725, 732-36, 123 L. Ed. 2d 508, 113 S. Ct. 1770 (1993), which provides that "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that **[**4]** affects substantial rights." *Pirani*, 406 F.3d at 550. If all three conditions are met, then "an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

The first two *Olano* factors are satisfied. *Id.* *HN4*To prove the third *Olano* factor, that the errors affected his substantial rights, Parks must show that there is a reasonable probability that "the district court would have imposed a more favorable sentence under the advisory guidelines regime mandated by *Booker*." *Pirani*, 406 F.3d at 553. Parks's brief does not argue that the district court would have imposed a more favorable sentence under an advisory

guidelines regime and the record on appeal would not support this contention. HN5 While he was sentenced at the bottom of the obstruction-of-justice Guidelines range, this is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the *Booker* error. *Id.* Parks has failed to meet his burden of proving prejudicial plain error. **[**5]**

We affirm the decision of the district court in all respects.

Service: **Get by LEXSEE®**
Citation: **2005 U.S. App. LEXIS 14799**
View: Full
Date/Time: Thursday, April 26, 2007 - 11:42 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

LexisNexis About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

separate trial, credibility, admissible, testifying, downwardly, sever, specific intent, career, aggravated, connected, recalled, mistrial, sworn, girls, supplemental briefing

**LexisNexis(R) Headnotes**

Criminal Law & Procedure > Accusatory Instruments > Indictments
Criminal Law & Procedure > Appeals > Standards of Review > Harmless & Invited Errors > General Overview
***HN1*** See Fed. R. Crim. P. 8(a).

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > General Overview
Criminal Law & Procedure > Witnesses > Credibility
***HN2*** It is properly the province of a jury to resolve matters of witness credibility.

Criminal Law & Procedure > Appeals > Standards of Review > Substantial Evidence
Evidence > Procedural Considerations > Weight & Sufficiency
***HN3*** With regard to an evidence insufficiency claim, the role of an appellate court is to determine whether a rational jury would have no choice but to reasonably doubt the existence of an element of a crime charged.

Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Cruelty to Animals > General Overview
Criminal Law & Procedure > Jury Instructions > Particular Instructions > Elements of the Offense
Governments > Legislation > Statutes of Limitations > Time Limitations
***HN4*** A variance between the date in an indictment and the proof is not fatal if the proof shows that the acts charged were committed on a date within the statute of limitations and prior to the return date of the indictment. The date of the offense is not an element of the charge.

Civil Procedure > Appeals > Standards of Review > De Novo Review
Criminal Law & Procedure > Appeals > Standards of Review > De Novo Review > General Overview
***HN5*** Questions of law are reviewed by an appellate court de novo.

Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Right to Jury Trial
Criminal Law & Procedure > Trials > Defendant's Rights > Right to Jury Trial > General Overview
Criminal Law & Procedure > Appeals > Standards of Review > Harmless & Invited Errors > General Overview
***HN6*** It is error not to administer the oath to jurors before the beginning of a trial. The swearing-in of a jury is important because at that point jeopardy attaches. In the absence of prejudice caused by the delay in administering the oath, the error is harmless.

Civil Procedure > Appeals > Standards of Review > De Novo Review
Criminal Law & Procedure > Trials > Motions for Severance
Criminal Law & Procedure > Appeals > Standards of Review > De Novo Review > General Overview
***HN7*** An appellate court reviews a decision to join counts in a single trial de novo.

Criminal Law & Procedure > Accusatory Instruments > Indictments
Criminal Law & Procedure > Appeals > Standards of Review > Harmless & Invited Errors > General Overview
Evidence > Relevance > Confusion, Prejudice & Waste of Time

Broad interpretation of Fed. R. Crim. P. 8(a) is encouraged for the efficient administration of justice. The United States Court of Appeals for the Eighth Circuit has recognized that prejudice may result from a possibility that the jury might use evidence of one crime to infer

guilt on the other or that the jury might cumulate the evidence to find guilt if the crimes were considered separately. On the other hand, a defendant does not suffer any undue prejudice HN8 by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime.

Criminal Law & Procedure > Pretrial Motions > Joinder & Severance > Joinder of Defendants
Criminal Law & Procedure > Pretrial Motions > Joinder & Severance > Severance of Defendants
Criminal Law & Procedure > Trials > Motions for Severance

To avoid prejudice, a district court can always grant severance. A denial to sever is only reversed if the defendant can show severe prejudice. Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that the defendant would have had in a severed trial. The mere fact that the defendant does not want to testify as to one charge but does want to testify as to a second charge is not enough to require severance. No need for a severance exists until the defendant makes a convincing showing HN9 that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information--regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other--to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying.

Criminal Law & Procedure > Trials > Burdens of Proof > Defense
Criminal Law & Procedure > Trials > Defendant's Rights > Right to Testify
Criminal Law & Procedure > Trials > Motions for Severance

HN10 Prejudice sufficient to require separate trials, where a defendant wants to testify in one but not the other trial, may be established only by a persuasive and detailed showing regarding the testimony that the defendant would give on the one count he wishes severed and the reason why he cannot testify on the other counts.

Criminal Law & Procedure > Discovery & Inspection > Discovery by Defendant > General Overview
Criminal Law & Procedure > Appeals > Standards of Review > Abuse of Discretion > General Overview
Evidence > Testimony > Experts > Criminal Trials

HN11 An appellate court reviews the denial of a motion to compel the examination of a child crime victim for abuse of discretion. The defendant must convince the court that expert services are necessary to present an adequate defense.

Civil Procedure > Trials > Jury Trials > Jury Instructions > General Overview
Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Obstruction of Justice > Elements
Criminal Law & Procedure > Appeals > Reversible Errors > Jury Instructions

HN12 An appellate court reviews a district court's instructions in their entirety. Failure to give a requested instruction is not erroneous if the court's charge, as a whole, correctly instructs the jury on the applicable law. The appellate court will reverse only if the error affects the substantial rights of the parties.

Civil Procedure > Trials > Jury Trials > Jury Instructions > General Overview
Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Obstruction of Justice > Elements
Criminal Law & Procedure > Jury Instructions > Particular Instructions > Elements of the Offense

HN13 A charge of obstruction of justice requires a jury instruction on specific intent.

Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Right to Jury Trial
Criminal Law & Procedure > Sentencing > Criminal History > Prior Felonies